UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI WOIDA and
CAROLYN VIERA,

                Plaintiffs,                    No. 12-12978

vs.                                  Hon. Gerald E. Rosen

GENESYS REGIONAL MEDICAL
CENTER and JENNIFER ROTH,

                Defendants.
_____/

OPINION AND ORDER REGARDING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on March 18, 2014

PRESENT:Honorable Gerald E. Rosen
United States District Chief Judge

## I. INTRODUCTION

Plaintiffs Lori Woida and Carolyn Viera are former employees of Genesys

Regional Medical Center.  They are suing their former employer and their former

supervisor, Jennifer Roth, for alleged violations of the Family and Medical Leave Act.

This matter is presently before the Court on Defendants' Motions for Summary

Judgment.  Plaintiffs have responded and Defendants have replied.  Having reviewed and

considered the parties' briefs and the voluminous exhibits submitted in support, the Court

1

has determined that oral argument is not necessary.  Therefore, pursuant to Eastern

District of Michigan Local Rule 7.1(f)(2), this matter will be decided "on the briefs."

This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Plaintiffs Lori Woida and Carolyn Viera are former employees of Genesys

Regional Medical Center ("Genesys") in Flint, Michigan.  Both Plaintiffs were employed

by Genesys as part-time Financial Administrative Associates  ("FAAs") pursuant to a

Collective Bargaining Agreement entered into between Genesys and AFSCME Local

3518, and both worked under the direct supervision of Genesys' Revenue Manager

Jennifer Roth.  Plaintiff Woida's employment was terminated on July 6, 2010; Plaintiff

Viera was terminated on November 1, 2011.

Upon being hired by Genesys, both Woida and Viera signed "Acceptance of

Employment" forms acknowledging that as a condition of employment they "agree[d] to

comply with all applicable rules, regulations and policies," and further acknowledging

that their scheduled hours and job assignments were "subject to change."  *See*

Defendants' Ex. 1, Dkt. Nos. 59-2; 63-2.  They each also acknowledged receipt of the

corporate Standards of Conduct [Defendants' Woida SJ Ex. 20, Dkt. 70-21][1] and agreed

to follow them, understanding that compliance with the Standards of Conduct and the

---

[1]  Defendants' exhibits in support of their motion for summary judgment on
Plaintiff Woida's claims are cited herein as "Woida SJ Ex. ___"; citations to Defendants'
exhibits in support of their motion for summary judgment on Plaintiff Viera's claims are
cited as "Viera SJ Ex. ___"

Corporate Responsibility Program was a condition of their continued employment.  Dkt.

Nos. 59-3; 63-4.  Woida and Viera also acknowledged their receipt of copies of the

Collective Bargaining Agreement ("CBA") entered into by Genesys and AFSCME Local

3518.  *See* Defendants' Ex. 1; Woida Dep. pp. 56, 66; Viera Dep. p.  40.  The CBA

expressly approved of Genesys's adoption, revision and enforcement of its rules and

regulations.  *See* CBA Art. 7, Defendants' Ex. 5, p. 14.  The CBA further provided that

Genesys had the right to change starting and quitting times for each employee and to

decide the assignment of time for lunch and relief time.  CBA Art. 13, § 4.

DISCIPLINARY AND LEAVE PROVISIONS OF THE CBA

The Genesys CBA also provided for progressive discipline for all disciplinary

infractions.  *See* CBA Art. 8 and Art. 19.  Generally, the CBA called for five-steps of

progressive discipline:

> Step One -- Written Warning
> Step Two -- Written Reprimand
> Step Three -- 3-Day Suspension
> Step Four -- Five-Day Suspension or more
> Step Five -- Discharge

Defendants' Ex. 5, Art. 8, § 1.[2]

---

[2]  Progressive discipline for excessive absenteeism and tardiness is dealt with separately in Article 19.  Pursuant to Article 19, it is not until an employee has accumulated seven absences in a 12-month period that progressive disciplinary measures are commenced with a Step One written warning.  CBA Art.(B).  If there are 10 absences in the 12-month period, the employee is issued a written reprimand.  *Id.*  Thereafter, the period of review shortens and the penalties progress to three-day and five-day suspensions, and ultimately termination.  *Id.*

3

The CBA also detailed the rules governing leaves of absence, and included a separate section governing FMLA leave. *See* CBA, Art. 12, § 4. This section expressly informed employees that to be eligible for FMLA leave, the employee must have been (1) employed by the Medical Center for at least 12 months and (2) have worked 1,250 hours during the previous 12-month period. *Id.* The CBA further informed that an employee is eligible for a total of 12 workweeks of leave in a 12-month period, and that this 12-month period "is measured back from the date an employee uses   any FMLA leave." *Id.* The CBA also advised employees that "[c]opies of the FMLA Notice of Rights and Responsibilities as administered by Genesys are available at the Human Resource Department." *Id.*

With respect to taking leave time off, the CBA specified a notice requirement:

> Requests for leaves of absence must be in writing and submitted to Employee Health not less than thirty (30) days before the date the leave is to begin. If such notice is not practicable, then notice is to provided as soon as practicable, but no later than seven (7) calendar days from the last day of work. Failure to do so may result in termination of employment.

*Id.*, Art. 12, § 1.E. FMLA leave is subject to these notice requirements. *See id.*, Art. 12, § 4.

In addition to the information provided in the CBA, according to the record evidence provided in this case, Genesys management kept employees informed of their FMLA rights and responsibilities and any changes in the law or Genesys FMLA policies and procedures. Tamika Zinn, one of Genesys' Disability Specialists who was

4

responsible for processing FMLA leaves from 2003 through August 2012, testified in her deposition that after the new FMLA regulations came out in 2009, Genesys seized the opportunity to clean up its policies and tighten up "gaps" in enforcement of its notice requirements. *See* Zinn Dep., Plaintiff Woida's Ex. 22, Dkt. #70-23, p. 23. Employees were specifically informed at this time that the seven-day notice policy was going to be strictly enforced. *Id.* at p. 24. Zinn testified that stringent enforcement began in May or June 2010, but before then, Genesys had to educate and communicate this to its employees. *Id.* She testified that to do so,

> [w]e put an article in our employee newsletter called *The Ink*, we posted some information on our employee bulletin board, we did some learning sessions, several different learning sessions, actually, three different learning sessions, and we opened it up to all employees. We updated our FMLA leave of absence paperwork to kind of highlight the seven-day policy. We did a Q and A to give out to employees any time they requested FMLA paperwork. And we also had a representative explain to every employee that comes into the office to pick up paperwork, we sit down and go over the leave paperwork and what the policies are.

*Id.* at pp. 24-25.

Genesys also put on several "Lunch and Learns" in 2010 which were open to all Genesys employees, which Zinn personally handled, during which all policies and procedures, including the seven-day, policy were reviewed. *Id.* at pp. 25, 122-23.

PLAINTIFF WOIDA'S EMPLOYMENT WITH GENESYS

Lori Ann Woida began her part-time employment at Genesys in September 2003

as an Administrative Associate in administrative support services.  [Woida Dep. p. 15.]

Soon thereafter, she became a Financial Administrative Associate ("FAA") in the

emergency department, a position she held throughout the rest of her employment at

Genesys.  *Id.*  As an FAA, Woida was responsible for registering patients, verifying their

insurance coverage, and obtaining from them required authorizations for treatment and

payment.  [*See* Deposition of Jennifer Roth, p. 17.]

During the course of her tenure as an FAA, Woida worked for five different

supervisors -- Judy Walker, Lisa Goyette, Suzanne Heiple, Blake Graves and Jennifer

Roth.  [Woida Dep. at pp. 57-61].  Jennifer Roth became Woida's supervisor in April of

2008.  *Id.* at 77.  Although Woida claims in this lawsuit that she was not subject to

disciplinary action until after Jennifer Roth became her supervisor and until after she

applied for FMLA leave in October of 2008, the record evidence shows that Woida was

written up and/or reprimanded by every one of her supervisors dating back to 2004.  *See*

Defendants' Woida SJ Exhibits 16-21.  She was, in fact, disciplined no less than 11 times

prior to October 2008, eight times by supervisors other than Jennifer Roth, for offenses

ranging from excessive absenteeism and tardiness to insubordination.  *See id.*[3]  Roth

herself issued Woida a written reprimand and two three-day suspensions prior to her

---

[3]  Woida appears to draw a distinction between disciplinary action taken for excessive absenteeism and "standards of conduct" violations.  However, contrary to her assertions, Jennifer Roth was not the only supervisor to discipline her for standards of conduct violations.  Suzanne Heiple, Woida's supervisor in 2006-07, wrote Woida up in 2006 for insubordination, for substantially the same conduct giving rise to disciplinary action in 2009-10 by Roth.  See Woida SJ Ex. 17.

6

applying for FMLA leave.  *Id.*

WOIDA IS CERTIFIED FOR INTERMITTENT FMLA LEAVE

On October 14, 2008, Woida obtained the certification of her physician for intermittent FMLA leave because of menstrual migraine headaches.  *See* Woida SJ Ex. 7. The certification stated that "[t]he migraines were first diagnosed April 3, 2008" and that "[e]ach episode may vary in intensity. . . and may last one to several days."  *Id.*  Her doctor further stated that Woida "may be unable to work when pain is severe," and, therefore, certified her as needing intermittent leave for "up to one episode monthly."  *Id.*

Woida thereafter timely submitted the required FMLA leave of absence forms and her leave requests for intermittent FMLA leave days on October 20, 2008, November 5 and 7, 2008, January 13, February 13, March 20, April 14 and 21, May 20, and July 12 through 14, 2009.  *See* Woida SJ Ex. 8.  However, her request for intermittent FMLA leave for July 27, 2009 was denied.  Woida SJ Ex. 9 pg. 1960.  The denial letter Genesys sent to Woida by certified mail explained that the reason her request for FMLA intermittent leave on this date was denied was because "[t]he frequency of your episodes of incapacity does not correspond with the medical information provided by your Attending Physician," *id.* which was for "one episode monthly."  *Id.* at pg. 1965.

Woida thereafter submitted requests for intermittent FMLA leave for August 23, September 28 and 30, 2009, and these requests were approved without incident.  Woida SJ Ex. 8.

On October 30, 2009, Woida' physician provided a new certification for intermittent FMLA leave.  *See* Woida SJ Ex. 10.  This new certification reiterated the need for intermittent leave because of recurrent headaches but this time, did not limit the need for one episode of menstrual headaches monthly; rather it more broadly certified that Woida's "[h]eadaches are more likely to occur in conjunction with menstrual cycle but are also triggered by other circumstances."  *Id.* at pg. 1968.

Woida thereafter submitted requests for, and was granted, intermittent FMLA leave for absences on October 9 and 31, 2009, November 29, 2009; and January 1, February 8, 9, 11, 12, 22 and 26, and May 28 and 29, 2010.  *See* Woida SJ Ex. 11.

On June 30, 2010, Woida submitted two separate requests for intermittent FMLA leave -- one for absences on June 18, 21, 23, 24, 25 and 29, 2010, and one for absences on June 9, 11, 13, 14 and 18, 2010.  *See* Woida SJ Ex. 12.  Plaintiff offered no explanation as to why she submitted two separate requests on June 30th.[4]  Genesys approved her request for June 23, 24, 25 and 29, 2010, *id.* pg. 2001, but denied her request for FMLA leave on June 9, 11, 13. 14, 18 and 21, 2010.  *Id.* pg. 2004.  The denial letter sent to Woida on July 2, 2010 explained that her request was denied because it was untimely:

---

[4]  Coincidentally, on the same date that Woida submitted these two request forms, she was issued a 3-day suspension for excessive absenteeism for violation of Article 19 of the AFSCME contract.  The dates of absences (all non-FMLA absences) giving rise to this disciplinary action were noted on the "Disciplinary Action Notice for Attendance" form as:  12-17-09, 12-18-09, 12-30-09, 1-22-10, 1-28-10. 3-29-10, 4-07-10, 4-08-10, 4-09-10, **6-09-10, 6-11-10, 6-13-10 and 6-14-10**. *See* Woida SJ Ex. 13.

> According to the Leave of Absence process, when the need for leave is unforeseeable employees are required to turn in the necessary leave of absence paperwork to Human Resources within seven (7) calendar days of their last day worked.  Your application was received on June 30, 2010.  Therefore the above dates [6/9/10, 6/11/10, 6/13/10, 6/14/10, 6/18/10 and 6/21/10] **will not** be considered under the Family Medical Leave Act and we will follow Medical Center Guidelines and Collective Bargaining Agreements regarding attendance and benefit provisions.[5]

*Id.* (Emphasis in original.)

## WOIDA'S DISCIPLINARY ACTIONS

Over the course of this same time period, Woida was subject to disciplinary action several times for various Standards of Conduct violations.  On January 30, 2009, Woida was issued a written reprimand by her supervisor, Jennifer Roth, for failure to properly hand off her pager and for refusing to work mandated overtime.  *See* Woida SJ Ex. 20, 23.  Then, on June 18, 2009 she was suspended three days for insubordination for refusing to follow her supervisor's instructions.  Woida SJ Ex. 21.  On October 12, 2009, she was suspended for five days for leaving work early without authorization.  This suspension was served concurrently with a five-day suspension she was issued on October 20, 2009 for failure to comply with the hospital's registration process by failing to adequately confirm critical patient registration information.  Woida SJ Ex. 22.[6]

---

[5]  Woida worked on June 8th, *see* Woida SJ Ex. 14, pg. 2024, therefore, to have been timely under the CBA, her request for leave on June 9 through 14 was due on June 16.  She also worked on June 17, *see id.*, therefore, her request for leave on June 18 and 21 was due no later than June 24.

[6]  Although the union and medical center's investigation confirmed that Woida was guilty of the misconduct charged in both the October 12 and October 20 notices, the

On June 30, 2010, a three-day suspension was imposed on Woida for excessive absenteeism (see note 3 *supra*).  In addition to this attendance infraction, Woida committed a series of infractions in June 2010 that constituted violations of the hospital's Standards of Conduct. On June 12, 2010, Woida left her work area unattended at a time when four ambulances had just arrived, and instead of assisting with the registration of the incoming patients, she went to the hospital's Subway restaurant and remained there until the end of her shift to punch out.  *See* Woida SJ Ex. 17.  Then, on June 16, 2010, she was found guilty of failing to act with respect in communicating with a patient after the  patient complained about her.  *Id.*  On June 18, 2010 she failed to timely call in to notify the hospital that she would be late for work.  *Id.*  As a result of these accumulated disciplinary infractions, in accordance with the collectively-bargained progressive disciplinary process, on July 6, 2010, Woida's employment with Genesys was terminated.

Woida now has sued both Genesys and Jennifer Roth claiming that they interfered with her FMLA rights by denying her requests for FMLA leave on July 27, 2009 and on June 9, 11, 13, 14, 18 and 21, 2010.  She also claims that Defendants retaliated against her for taking FMLA leave by disciplining her for various Standards of Conduct infractions.

---

concurrent suspension for non-compliance with the hospital's registration process was removed in resolution of Woida's grievance of the matter, but because the five-day suspension for leaving work early was in compliance with the  progressive disciplinary process, it was left in force.

CAROLYN VIERA'S REQUESTS FOR FMLA LEAVE

Carolyn Viera was hired by Genesys in June 2005 as a part-time Administrative Assistant; in 2007 she became a part-time FAA. As an FAA, Viera, like Woida, worked in the emergency department under the supervision of Jennifer Roth.[7]

Viera submitted her first physician's certification for FMLA leave in April 2007 for a one-week leave of absence because of bleeding ulcers. [*See* Viera Dep. p. 55; Defendants' Viera SJ Reply Brief Ex. 3.] She testified her bleeding ulcers were resolved and returned to work with no continuing effects. [Viera Dep. p. 55.] Then, on January 29, 2009 Viera obtained another physician's certification. This certification provided that she would require intermittent absences "at least every six months" for the care and treatment of her son who suffered from a "pervasive developmental disorder." Defendants' Viera SJ Brief, Ex. 5. Pursuant to that certification, between February and July 2009, Viera requested -- and was granted -- FMLA leave to care for her son on 19 separate occasions. Viera SJ Ex. 6. Viera was also certified for, and was granted, a continuous FMLA leave of absence from February 3 through February 10, 2009 as she was unable to work because of "anxiety, stress and panic attacks." Viera SJ Ex. 7. She also requested and was approved for a continuous FMLA leave from July 15 through 31, 2009 for gallbladder issues. Viera SJ Ex. 8. She then requested another contiuous FMLA leave from August 12 through September 7, 2009 for gallblader surgery. Viera SJ

---

[7] Before Ms. Roth became Viera's supervisor in April 2008, Viera worked under the supervision of Judy Walker, Lisa Goyette and Blake Graves. [Viera Dep. pp. 34-36.]

Ex. 9.  For this request, however, Viera was only granted FMLA leave from August 12th through 28th; the remainder of the time she had requested -- i.e., from August 29th through September 7th -- was designated as regular sick leave because Viera had exhausted her FMLA entitlement.  Ex. 10.  In the meantime, on August 20, 2009, Viera obtained another certification for intermittent FMLA leave for the care of her son who as of that date was diagnosed with autism.  Viera SJ Ex. 11.

Between February and August of 2010, Viera requested and was approved for intermittent FMLA leave to care for her son on 24 separate occasions. *See*  Viera SJ Ex. 12.  She also requested and was approved for a two-week continuous FMLA leave from June 25 through July 8, 2010 to care for her son.  *See id.*  On August 12, 2010, Viera requested another continuous FMLA leave for "personal illness" from August 11with an end date "to be determined by [her] physician."  *See* Viera SJ Ex. 13.  She was granted FMLA leave for that request from August 11 through August 19, 2010, but the remainder of the time requested (August 20 through October 31, 2010) was designated as sick leave because she had exhausted her FMLA entitlement.  *Id.*  Viera returned to work without restrictions on November 3, 2010.  But, nine days later, on November 12, 2010, Viera submitted a doctor's note stating that for "medical reasons," she could only work four-hour shifts until January 7, 2011.

However, as of November 12, 2010, Viera had only worked 1,071 hours in the preceding 12 months.  *See* Viera SJ Ex. 15; Ex. 40.  Therefore, she did not qualify for

reduced schedule FMLA leave.  *See*  Viera SJ Ex. 16.  Because her manager was unable to accommodate the four-hour shift restriction, Viera was approved for a full non-FMLA medical leave from November 18, 2010 through January 7, 2011.  *Id.*  However, just days after submitting her November 12 request, Viera submitted another doctor's note indicating that she was able to return to work without restrictions on November 30, 2010.  Viera SJ Ex. 17.

In 2011, Viera submitted her first request for FMLA leave to cover an absence incurred on January 26, 2011.  Viera SJ Ex. 18.  Her request was denied because she had not worked the requisite 1,250 hours in the 12 months preceding the request, *id.*; she had only worked 1,029 hours.  Viera SJ Ex. 39, 40.  Similar requests for FMLA leave in 2011 to care for her son and for personal illness were denied because she had not worked the requisite 1,250 hours in the 12 months preceding each requested leave.  *Id.*; Exhibits 19; 40-45.[8]  Being ineligible for FMLA leave, Viera requested, and was granted, a non-FMLA medical leave of absence from June 10 through June 21, 2011.  Viera SJ Ex. 18, pg. ID 1402.

VIERA'S DISCIPLINARY INFRACTIONS AND TERMINATION

As indicated above, Genesys and Viera's union had agreed to two separate disciplinary procedures and progressive discipline policies -- one related to absenteeism

---

[8]  Viera grieved the denial of her 2011 FMLA leave requests.  *See* Defendants Viera SJ Ex. 20.  The grievance was denied and the Union declined to pursue arbitration. *Id.*

13

and tardiness, and one for conduct unrelated to absenteeism and tardiness (i.e.,

"Standards of Conduct" violations).  *See* Ex. 4 Art. 8; Art. 19.  Viera had a history of

Standards of Conduct disciplines.  During the course of her employment with Genesys,

Viera was issued three Written Warnings, a Written Reprimand, a three-day suspension,

two five-day suspensions -- and was ultimately terminated -- for various Standards of

Conduct violations which included repeated instances of insubordination, dishonesty,

disrespectful and disruptive behavior, and violating hospital policies and procedures:

- On September 23, 2006, Lisa Goyette (Viera's supervisor at the time) issued Viera a Written Warning for ignoring her supervisor's requests and not showing up for a meeting she was directed to attend.  [*See* Viera SJ Ex. 23]

- On August 28, 2007, Blake Graves, her supervisor at the time, suspended her for five days for violating HIPPA by coming into the work area after her working hours in street clothes and accessing a patient's confidential medical records without authorization.  [Viera SJ Ex. 24.]

- On August 29, 2008, Jennifer Roth issued Viera a Written Warning for refusing and failing to comply with the patient information collection process instituted in her department after having been repeatedly informed of the need to do so.  [Viera SJ Ex. 25]

- On January 30, 2009, Roth issued Viera a second Written Warning for disruptive behavior for shouting at her co-workers and for failing to fill the "Team Lead" role she was assigned that day.  [Viera SJ Ex. 26.]

- On February 2, 2009, Viera was issued a Written Reprimand for disruptive behavior, dishonesty, and misusing hospital equipment [Viera SJ Ex. 27]

- On October 20, 2009, Roth suspended Viera for three-days for

dishonesty, disruptive behavior and leaving work without authorization before her shift was over [Viera SJ Ex. 28-29][9]

- On January 11, 2011, Viera was suspended for five days, again for violating HIPPA by disclosing confidential patient information and disruptive, discourteous conduct [Viera SJ Ex. 31-32][10]

Then, on October 26, 2011, the Medical Center received a complaint from a patient about Viera's discourteous and disrespectful conduct during the patient's registration in the emergency room. The hospital's investigation into the matter validated the patient's complaint that Viera had been rude and displayed inappropriate behavior by shouting at her supervisor, which was corroborated by three witnesses. Following the investigation, on November 1, 2011, Viera's employment with Genesys was terminated. [*See* Viera SJ Ex. 22, 35.] Viera's grievance regarding her termination was denied and the Union declined to submit it to arbitration. [Viera SJ Ex. 36.]

Viera thereafter joined Lori Woida in suing Genesys and Jennifer Roth. Although Viera originally asserted claims of FMLA interference and retaliation and Michigan Elliott-Larsen Civil Rights Act claims of race and ethnic discrimination/retaliation, she has since stipulated to the dismissal of her FMLA interference claim and her race and ethnic discrimination claims, [*see* 6/26/13 Stipulated Order for Dismissal With Prejudice as to Counts I and III Only, Dkt. # 71], and she does not oppose Defendants' Motion for

---

[9] Viera grieved this suspension; the grievance was denied and the Union declined to submit it to arbitration. [Viera SJ Ex. 30]

[10] Viera's grievance regarding this suspension was denied and the Union did not submit it to arbitration. [Viera SJ Ex. 33]

15

Summary Judgment on her claim of retaliation under the Elliott-Larsen Act. Therefore, Viera's only remaining claim in this action is that Defendants disciplined her for various Standards of Conduct violations in retaliation for her taking FMLA leave.

## III. DISCUSSION

### A. APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere

16

existence of a scintilla of evidence that supports the nonmoving party's claims is

insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal

quotation marks, and citation omitted). The Court will apply the foregoing standards in

deciding Defendants' motions for summary judgment in this case.

B.    THE FAMILY AND MEDICAL LEAVE ACT

    The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the

"FMLA"), entitles an eligible employee to a total of 12 weeks of leave per year for one or

more of the following:

> (A) Because of the birth of a son or daughter of the employee and in order
> to care for such son or daughter.
>
> (B) Because of the placement of a son or daughter with the employee for
> adoption or foster care.
>
> (C) In order to care for the spouse, or a son, daughter, or parent, of the
> employee, if such spouse, son, daughter, or parent has a serious health
> condition.
>
> (D) Because of a serious health condition that makes the employee unable
> to perform the functions of the position of such employee.
>
> (E) Because of any qualifying exigency. . . arising out of the fact that the
> spouse, or a son, daughter, or parent of the employee is on covered active
> duty (or has been notified of an impending call or order to covered active
> duty) in the Armed Forces.

29 U.S.C. § 2612(a)(1). When medically necessary, such leave may be taken

intermittently or on a reduced leave schedule. *Id*. § 2612(b)(1).

    The Sixth Circuit recognizes two distinct theories for recovery under the FMLA:

(1) the "entitlement" or "interference" theory arising under 29 U.S.C. § 2615(a)(1), and

17

(2) the "retaliation" or "discrimination" theory arising under 29 U.S.C. § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co*., 681 F.3d 274, 282 (6th Cir. 2012).

The interference provision of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [in the Act]." 29 U.S.C. § 2615(a)(1). To prevail on a claim alleging unlawful interference with FMLA rights, a plaintiff must establish (1) that he is an eligible employee; (2) that the defendant is an employer as defined in the Act; (3) that he was entitled to leave under the FMLA; (4) that he gave the defendant notice of his intention to take leave; and (5) that the defendant denied him FMLA benefits to which he was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citation omitted). Plaintiff must establish these elements by a preponderance of the evidence. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citing *Sorrell v. Rinker Materials Corp.*, 395 F.3d 322, 335 (6th Cir. 2005)).

C.   PLAINTIFF WOIDA'S FMLA INTERFERENCE CLAIM IS TIME-BARRED

Plaintiff Woida claims that Defendants interfered with her FMLA rights by denying her FMLA leave on July 27, 2009 and on June 9, 11, 13, 14, 18 and 21, 2010. Defendants argue, among other things, that Woida's claim regarding these denials of FMLA leave is time-barred.

The FMLA has its own statute of limitations, which provides:

(1) In general

18

Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

(2) Willful violation

In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c).

Pursuant to this statute, the limitations period is normally two years, but is extended to three years if the FMLA violation was willful. *Id.* The FMLA does not define "willful" but the Sixth Circuit has held that "[a]n employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir.2004). Mere negligence is not enough. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L. Ed. 2d 115 (1988) ("The word 'willful'. . . is generally understood to refer to conduct that is not merely negligent."). The plaintiff bears the burden of proving a willful violation in order to get the benefit of the extended three-year statute of limitations. *Hoffman v. Professional Medical Team*, 394 F.3d 414, 417 (6th Cir. 2005). "The determination of willfulness involves a factual question." *Ricco*, 377 F.3d at 602. But, "[a] plaintiff must do more than show that his 'employer knew [the FMLA] was in the picture,' because such a low standard would 'obliterate any distinction between willful and nonwillful violations.'"

19

*Upchurch v. Mount Carmel Health Sys.*, 893 F. Supp. 2d 899, 907 (S.D. Ohio 2012)

(quoting *Waites v. Kirkbride Ctr.*, 2011 WL 2036689  at *9 (E.D. Pa. 2011) (quoting

*McLaughlin*, 486 U.S. at 132, 108 S. Ct. 1677)); *see also Wilmath v. St. Joseph Mercy

Health Center*,  2009 WL 77616 at *3 (W.D. Ark. Jan. 9, 2009) ("[t]o create a genuine

issue of material fact that a violation was willful ... [t]hat the employer should have

known that its actions would violate the FMLA is insufficient").

　　Plaintiff here has not come forward with any evidence demonstrating that

Defendants acted "with knowledge that [their] conduct was prohibited by the FMLA or

with reckless disregard of the FMLA's requirements." *Ricco*, 377 F.3d at 602.  Rather,

she merely conclusorily alleges that "the evidence in this case establishes that

Defendants' actions towards Plaintiff were willful and wanton." Woida Response Brief,

p. 8.  However, she points to no evidence of record that suggests that Defendants denied

her July 29, 2009 and July 2, 2010 requests for leave knowing that their denials were

prohibited by the FMLA or that in doing so, Defendants acted with reckless disregard of

the FMLA's requirements.[11]  Therefore, she has not met her burden of establishing a

willful violation of the statute so as to entitle her to the benefit of the extended three-year

statute of limitations.

　　Applying the general two-year statute of limitations for FMLA claims, the Court

concludes that Plaintiff Woida's interference claim is time-barred.  Plaintiff's interference

_____

　　[11]  Indeed, as discussed in the following section, Defendants' denials were
completely in accord with the statute's requirements.

20

claim is predicated upon the denial of her requests for FMLA leave on July 27, 2009 and

June 9, 11, 13, 14, 18 and 21, 2010.  Plaintiffs filed this lawsuit on July 6, 2012, more

than two years after the date of the last denial of leave.  There was no interference with

Woida's FMLA rights during the period encompassed by the statute of limitations -- i.e.,

during the twenty-four months preceding Woida's initiation of this lawsuit. See 29

U.S.C. § 2617(c)(1). During that time period, Woida was not denied any FMLA benefits

to which she was entitled.  *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577-78

(6th Cir.2007) (citing *Walton v. Ford Motor Co*., 424 F.3d 481, 485 (6th Cir.2005)).

Because the denials of leave upon which Plaintiff Woida predicates her FMLA

interference claim are outside of the period encompassed by the statute of limitations, her

interference claim is not actionable.

D.    EVEN ON THE MERITS, WOIDA'S INTERFERENCE CLAIM FAILS

Even if the Court were to apply a three-year statute of limitations and consider

Woida's interference claim on the merits, the claim fails.

With respect to Woida's request for FMLA leave on July 27, 2009, that request

was denied by Genesys because "the frequency of [Woida's] episodes of incapacity [did]

not correspond with the medical information provided by [her] attending physician."

Woida SJ Ex. 9.  The physician certification submitted by Woida on October 8, 2008 for

intermittent FMLA leave for "menstrual migraines" [Woida SJ Ex. 7] was the only

certification on file with Genesys on July 27, 2009.  In that certification, Woida's

21

physician certified that "Woida may be unable to work when pain is severe, **up to one episode monthly**." *Id.* (emphasis added). At the time of Woida's July 27, 2009 request, Woida had already taken intermittent FMLA for "menstrual migraines" on July 12-14, 2009. [*See* Woida SJ Ex. 8, pg. ID 1943-1945; Ex. 38]. Therefore, Genesys determined that Woida did not qualify for intermittent FMLA leave a second time within the same month.

Where a physician's certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence. *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 314 (7th Cir. 1998); *see also Nawrocki v. United Methodist Retirement Communities, Inc.* 174 F. App'x 334 (6th Cir. 2006) ("An employer is entitled to rely on a "negative certification' in denying FMLA leave.")   Therefore, Defendants did not interfere with Woida's FMLA rights in denying her leave on July 27, 2009.[12]

Genesys denied Woida's request for FMLA leave on June 9, 11, 13, 14, 18 and 21,

---

[12]  Four months later, Woida obtained a second certification after she was treated by her physician on October 27, 2009 which did not limit the need for intermittent leave for her migraines to once a month. *See* Woida SJ Ex. 10. This certification was submitted to Genesys on November 18, 2009. *See id.*  Woida contends that Genesys should have retroactively rescinded its July 27, 2009 denial because of the new certification.  However, there is no evidence of record suggesting that Woida ever asked her employer to do so, even though the denial letter sent to her by Genesys's Human Resources Specialist by certified mail on August 31, 2009 invited her to do so. *See* Woida SJ Ex. 8, pg. ID 1946 ("Our decision is based on the information you have proved to us at this time.  If you have questions or additional information that you would like us to consider, please contact me at (810) 606-7008.").  And, there is nothing in the statute or regulations that would have required Genesys to do so *sua sponte.*

2010, because she did not turn in the necessary leave of absence request paperwork within seven calendar days of her last day worked as required under the Medical Center's Leave of Absence process.  *See* Woida SJ Ex. 12.  The 7-day requirement is set forth in Article 12 of the CBA, *see* Woida SJ Ex. 4. Woida admits that she received a copy of the CBA.  Woida Dep. pp. 56, 66.  The requirement is also set forth in bold face print in the Notice of FMLA Rights and Responsibilities provided to Genesys employees every time they request a leave of absence, *see* Woida SJ Ex. 6, and also explained in the FMLA FAQs attached to that notice.  *Id.* [Tamika Zinn Dep., pp. 63-64.]  Woida does not dispute that she received this Notice.

The FMLA permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances.  *See Srouder v. Dana Light Axle Manufacturing, LLC*, 725 F.3d 608, 614 (6th Cir. 2013) (citing 29 C.F.R. § 825.302(d)).  "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."  29 C.F.R. § 825.302(d).

In *Srouder*, the Sixth Circuit acknowledged that its prior ruling in *Cavin v. Honda of America*, 346 F.3d 713 (6th Cir. 2003), held that the FMLA did not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those

23

contemplated by the Act.  However, as the *Srouder* court noted, *Cavin*'s ruling was

predicated upon FMLA regulations that are no longer in effect.  *Srouder*, 725 F.3d at

614.  Therefore, the Court held that to continue to adhere to *Cavin*'s holding "would be to

ignore the revision's plain language designed to address the giving of notice. . . ."  *Id.* at

615.

> Thus, in light of the revisions to § 825.302(d), we hold that an employer
> may enforce its usual and customary notice and procedural requirements
> against an employee claiming FMLA-protected leave, unless unusual
> circumstances justify the employee's failure to comply with the employer's
> requirements.

*Id.*

Plaintiff Woida has not demonstrated any unusual circumstances to justify her

failure to comply with the Genesys 7-day rule with respect to submitting her request for

FMLA leave on June 9, 11, 13, 14, 18 and 21, 2010.  She was at work June 12, June 16,

June 17 and June 27.  *See* Woida SJ Ex. 14.  Therefore, she can show no circumstances

rendering it impracticable for her to have timely submitted her paperwork.  *See*

*Brennenan v. MedCentral Health Sys.*, 366 F.3d 412, 424 (6th Cir. 2004), *cert. denied*,

543 U.S. 146 (2005) (despite plaintiff's assertions to the contrary, there were no

extraordinary circumstances rendering it unfeasible for plaintiff to have given defendant

the necessary notice because plaintiff was at work the day before notice was due and,

thus, physically able to give defendant sufficient notice before the deadline).

Plaintiff appears to argue that Genesys should be estopped from relying on the 7-

day rule as the basis for its denial claiming that the rule was not enforced.  As evidence, she points to several of her requests that were not compliant with Genesys's procedures but were nonetheless approved by Genesys.  *See* Woida Response Brief, p. 13, n. 8. However only one of these involved a request for FMLA leave that was submitted after the expiration of the CBA's 7-day notice period.  *See* Woida SJ Ex. 8, pg. ID 1927-1930. This request, which was approved on February 10, 2009, was for a number of days, including several absences that occurred five to six months before the request was submitted.  *See id.*  Plaintiff testified in her deposition that these "back-dated" dates  were for absences she incurred in April - August 2008, prior to her having obtained her doctor's certification for intermittent FMLA leave, but were included in her February 2009 request at the behest of her union, and Genesys agreed to approve them:  "It was just to help me with my attendance issues because I was having so many medical problems in the past."  *See* Woida Dep. pp. 114-116.[13]  As this request was the result of a company-union agreement, and as such, might fall with the CBA's "unusual circumstances" exception to the 7-day rule to explain Plaintiff's February 2009 untimely

---

[13]   Woida stated that her union recommended that she obtain the FMLA medical certification because she had accumulated a number of attendance infractions and had recently been issued a three-day suspension absenteeism; she submitted her request for these dates after she obtained the FMLA certification from her doctor with the understanding that FMLA leave would take some of her absenteeism infractions off her record.  *See* Woida Dep., pp. 114-116.  After receiving Woida's FMLA physician certification, which indicated that Woida's migraines were first diagnosed on April 3, 2008, [*see* Woida SJ Ex. 7], Labor Relations approved the "back-dated" dates of April 3, April 4, July 23, and August 5, 2008. Woida Dep. p. 115.

submission, Plaintiff can hardly use the request as evidence of unusual circumstances to excuse her non-compliance with the seven-day rule more than a year later, particularly since Plaintiff Woida timely submitted every one of her 27 other requests for FMLA leave.  *See* Woida SJ Ex. 8.[14]  Therefore, she cannot be heard to claim that her non-compliance with the 7-day rule was routinely accepted.

Woida also claims that Defendants interfered with her rights to intermittent FMLA by failing to post a notice explaining the FMLA and the procedure for filing claims. Plaintiff argues in response to Defendants' Motion for Summary Judgment that "an employer who does not post the required notice concerning the employee's rights under the  FMLA 'cannot take any adverse action against an employee, including denying FMLA leave for failure to furnish the employer with advance notice.'"  Woida Response

---

[14]  A number the other requests relied on by Plaintiff do not contain Woida's signature or indicate the date of signing. Plaintiff claims that because Genesys approved these requests without proper signatures, they demonstrate that proper procedures were not always enforced.  However, the issue is not the lack of a proper signature but rather whether the requests were timely submitted.  Each of these requests all contain the dates for which leave was requested and are date-stamped with the date they were received by Genesys, and by the dates stamped, all of these requests were timely submitted. Another request Plaintiff claims was untimely submitted because it was submitted "10 days after the absence."  Woida Response Brief, n. 8. However, that request was for 4/14/09 *and* 4/21/09.  The Genesys rule was that the employee has *7 days from the last day worked* -- not 7 days from the absence -- to timely submit required leave paperwork.  Plaintiff has presented no evidence establishing that she worked on April 15, 2009 (or, for that matter, any other day between April 14th and 21st).  Her submission on April 23, 2009 would only be untimely under the Genesys rule if she had worked on April 15th.  She has presented no evidence establishing that this was the case. Therefore, Plaintiff's reliance on these requests as evidence that in denying her leave on June 9, 11, 13, 14, 18 and 21, 2010 as untimely Genesys engaged in prohibited FMLA interference is misplaced.

Brief, p. 10, quoting *Taylor v. Invacare Corp.*, 64 F. App'x 516, 2003 WL 21212674 (6th Cir. 2003). In *Taylor*, the plaintiff presented evidence that his employer did not post the required FMLA notice. Relying on 29 C.F.R. § 825.300(b), the court determined that the plaintiff was not required to provide the advance notice demanded by his employer. *Id.* at 520. However, the *Taylor* court's holding was predicated on a version of the regulation that is no longer in effect.

At the time of the decision, 29 C.F.R. § 825.300 contained a subsection (b) which provided:

> (b) An employer that willfully violates the posting requirement may be assessed a civil penalty by the Wage and Hour Division not to exceed $100 for each separate offense. Furthermore, *an employer that fails to post the required notice cannot take any adverse action against an employee, including denying FMLA leave, for failing to furnish the employer with advance notice of a need to take FMLA leave*.

29 C.F.R. § 825.300(b) (emphasis added).

This regulation, however, was revised January 16, 2009 and the revision eliminated completely the prohibition against adverse action if the required notice is not posted.[15] Thus, *Taylor*'s holding is no longer good law. As the Sixth Circuit found in

----

[15] As of January 16, 2009, former subsections (a), (b), and (c) have been collapsed into one subsection -- subsection (a), which in relevant part provides only:

> . . . An employer that willfully violates the posting requirement may be assessed a civil penalty by the Wage and Hour Division not to exceed $110 for each separate offense.

29 C.F.R. § 825.300(a) (effective January 16, 2009).

27

*Srouder*, to apply a holding that was based on prior version of the regulation "in the face of the express, plain language of the revised regulation would be to ignore the revision's plain language designed to address" the sanctions to be imposed on an employer for failure to post an FMLA notice. *Srouder, supra*, 725 F.3d at 615.

Therefore, even accepting Plaintiff's testimony that there were no FMLA posters posted at Genesys (which is contradicted by the testimony of Genesys Disability Specialist Tamika Zinn), Plaintiff's claim of FMLA interference based on failure to post a notice lacks legal support.[16]

For all of the foregoing reasons, the Court will grant Defendants' motion for summary judgment on Plaintiff Woida's FMLA interference claim.

E.   WOIDA'S FMLA RETALIATION CLAIM

The "retaliation" theory of recovery under the FMLA arises under 29 U.S.C. § 2615(a)(2), which provides,

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a)(2).

_____

[16]   Furthermore, courts have repeatedly held that a plaintiff may not maintain a private right of action based on the violation of the posting and notice requirements of the FMLA. *See Jessie v. Carter Health Care Ctr., Inc*., 926 F.Supp. 613, 617 (E.D.Ky.1996); *Blumenthal v. Murray*, 946 F. Supp. 623, 627 (N.D. Ill. 1996); *Latella v. National Passenger R.R. Corp.*, 94 F. Supp. 2d 186, 189 (D. Conn. 1999); *Cromier v. Littlfield*, 112 F. Supp. 2d 196, 200 (D. Mass. 2000). Such relief is available only to the Secretary of Labor. *Blumenthal*, 946 F. Supp. at 626-627.

1.    <u>Woida Has Made Out a *Prima Facie* Claim of Retaliation</u>

To establish a *prima facie* case of FMLA retaliation a plaintiff must show by a preponderance of the evidence that (1) she availed herself of a protected right under of the FMLA by notifying her employer of her intent to take leave, (2) her employer had knowledge of her intent to take leave, (3) plaintiff suffered an adverse employment action, and (4) there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Seeger*, 681 F.3d at 283; *Donald*, 667 F.3d at 761.

Plaintiff Woida predicates her retaliation claim on disciplinary actions taken against her from January 21, 2009 through her termination on July 6, 2010, to-wit,

- January 21, 2009, 5-day suspension for excessive tardiness;

- January 30, 2009, written warning for standards of conduct violation for unsatisfactory work performance;

- January 30, 2009, written warning for refusing mandation;

- June 18, 2009, 3-day suspension for insubordination;

- August 25, 2009, 3-day suspension for leaving work early without authorization;

- October 12, 2009, 5-day suspension for various standards of conduct violation; and

- her July 6, 2010 termination.

Only Woida's termination occurred within the period encompassed by the FMLA statute of limitations. *See* discussion in Section C, *supra*. Claims based on "adverse

acts" that occurred prior July 6, 2010 are time-barred.  *See Maher v. International Paper Company*, 600 F. Supp. 2d 940, 946-51 (W.D. Mich. 2009); *Barrett v. Illinois Dept. of Correction*, 958 F. Supp. 2d 984, 990-93 (C.D. Ill. 2013); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (holding that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period. . . even when they are related to acts alleged in timely filed charges." 536 U.S. 105, 113.)[17]

Defendants do not dispute that Woida satisfies the first three elements of a *prima facie* claim -- she engaged in protected activity under the statute; her employer knew she engaged in the protected activity and she suffered an adverse employment action. Defendants, however, dispute her satisfaction of the fourth element and contend that she has failed to demonstrate a causal connection between her protected activity and the adverse action , i.e., her termination.

To establish the causal connection required to satisfy the fourth prong of her *prima facie* case, Woida must produce sufficient evidence from which an inference could be

_____

[17]  Furthermore, to the extent that Plaintiff may be attempting to advance a "continuing violations" theory, "there is no legal precedent for applying the 'continuing violations doctrine' to FMLA claims." *Shepard v. United States*, 2009 WL 3106554, at *1 (E.D. Mich. 2009); *Smith v. Westchester County*, 769 F. Supp. 2d 448, 463 n.14 (S.D.N.Y. 2011) ("the weight of authority leans decidedly against" applying the continuing violations doctrine to FMLA claims); *Burgess v. JHM Hotels, LLC*, 2010 WL 1493129, at *5 n. 3 (D.S.C. 2010) (noting that the "propriety" of applying the continuing violation doctrine "in FMLA cases has been called into doubt").

drawn that her protected activity was a but-for cause of the alleged adverse action by her employer. *University of Texas Southwestern Medical Center v. Nassar*, ___ U.S. ___, ___, 133 S. Ct. 2517, 2533, 186 L.Ed. 2d 583 (2013); *see also Nguyen v City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (to establish a causal connection the plaintiff must establish that the adverse action would not have been taken had the plaintiff not engaged in protected activity); *Taylor v. Bd. of Educ. of Memphis Schools*, 240 F. App'x 717, 720 (6th Cir. 2007); *Ozier v. RTM Enterprises of Georgia, Inc.*, 229 F. App'x 371, 377 (6th Cir. 2007) ("Under federal law, in order to show a causal connection between the protected activity and the adverse action - the fourth element of the *prima facie* case - Ozier must produce sufficient evidence to support an inference that RTM took the adverse employment action because Ozier had complained of discrimination.").[18]

Defendants suggest, with no citation to authority, that no causal connection is shown in this case because of all of the times Woida had requested, and been approved for, FMLA leave. The Court disagrees.

"The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir.2008) (internal quotation marks omitted). Moreover, contrary to Defendants'

---

[18] Although *Nassar* and the other cited cases are Title VII retaliation cases, the Sixth Circuit has often relied on Title VII precedent in analyzing FMLA claims. *See, e.g., Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir.2008); *Bell v. Prefix, Inc.*, 321 F.App'x 423, 428 n. 2 (6th Cir.2009) (collecting cases); *see also Hoffman v. Prof'l Med Team*, 394 F.3d 414, 422 (6th Cir.2005) (observing that FMLA retaliation claims use the same analytical framework as Title VII retaliation claims).

31

assertion, the Sixth Circuit has repeatedly held that, in the FMLA context, close proximity in time between the protected activity and the adverse employment action may constitute sufficient evidence of a causal connection.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir.2001); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007); *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir.2002) (stating that, in the FMLA context, "[p]roximity in time can raise a *prima facie* case of retaliatory discharge").  *See also*, *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir.2006) ( "Temporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context.")

Defendants misquote *Mickey v. Zeidler Tool and Die Co.*, *supra*, in suggesting that more than mere temporal proximity is required to establish causation in all cases.  In *Mickey*, the Sixth Circuit actually said

> **[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection** for the purposes of satisfying a *prima facie* case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

32

*Id.* at 525 (citation omitted; emphasis added).

As the Circuit Court explained in *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) and more recently reiterated in *Gambill v. Duke Energy Corp*, 456 F. App'x 578, 589 (6th Cir. 2012), "this Court has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity."

In Plaintiff Woida's case, only six days separated protected activity and adverse action:  Plaintiff Woida engaged in protected activity by requesting FMLA leave on June 30, 2010; she was fired six days later, on July 6, 2010.  Such close proximity in time is sufficient to raise an inference of causal connection for purposes of establishing a *prima facie* claim.  *See e.g., Seeger, supra*, 681 F.3d at 283 (finding sufficient causal nexus where plaintiff was terminated three weeks after he was reinstated following his FMLA leave and less than two months after having requested such leave); *McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir.2004) (finding causation when "only 13 days" separated protected activity from adverse action); *Shefferly v. Health Alliance Plan of Michigan*, 94 F. App'x 275, 285 (6th Cir.2004) (the passage of less than three weeks between the employer's receipt of  charges and the complained of action held sufficient to give rise to an inference of discrimination).

Therefore, the Court concludes that Woida has made out a *prima facie* claim of retaliation.

33

2.    Defendants Have Demonstrated a Non-Discriminatory Reason for Woida's
      Termination

The Sixth Circuit held that where, as here, the plaintiff's showing of the fourth

element of her *prima facie* case -- causal connection -- is based on indirect evidence,

courts are to employ the *McDonnell Douglas*[19] burden shifting analysis.  *Skrjanc*, 272

F.3d 309 at 315; *Seeger*, 681 F.3d at 283; *Donald*, 667 F.3d at 762; *Edgar,* 443 F.3d at

508.  Thus, as under *McDonnell Douglas*, once a plaintiff offers sufficient indirect

evidence to support a *prima facie* FMLA claim, the burden of production shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the employment

decision.  *McDonnell Douglas*, 411 U.S. at 802-802, 93 S. Ct. 1817; *Seeger*, 681 F.3d at

284.  If the employer articulates a legitimate reason for its action, the burden of

production shifts back to the plaintiff to demonstrate that the employer's reason is pretext.

*Id*. 285.  A plaintiff may show pretext by demonstrating that the proffered reason (1) had

no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant

the action. *Id*.; *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).

In this case, Defendants proffered a legitimate, non-discriminatory reason for

Woida's termination:  a series of infractions June 12 through 18, 2010 that constituted

violations of the hospital's Standards of Conduct, to-wit, leaving her work area

unattended at a time when four ambulances had just arrived; failing to act with respect in

---

[19]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668
(1973).

communicating with a patient after the patient complained about her; failing to timely call in to notify the hospital that she would be late for work. *See* Woida SJ Ex. 17. As a result of these accumulated disciplinary infractions, and a disciplinary action for excessive absenteeism on June 30, 2010, [Woida SJ Ex. 13], in accordance with the collectively-bargained progressive disciplinary process, on July 6, 2010, Woida's employment with Genesys was terminated.

3.     Plaintiff Woida Has Failed to Establish Pretext

Defendants having articulated a non-discriminatory reason for the employment decision, the burden of production shifts back to Woida to demonstrate by a preponderance of the evidence that the legitimate reasons offered by Defendants were in fact a pretext for discrimination. *DiCarlo*, 358 F.3d at 415. A plaintiff can establish pretext by demonstrating that the reasons offered by the defendant: (1) has no basis in fact; (2) did not actually motivate the adverse employment decision in question, or (3) was insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir.2009). Plaintiff purports to challenge Genesys's decision on all three bases.

However, to the extent that Woida seeks to demonstrate that Defendants' proffered reasons had "no basis in fact," it is well-settled that "as long as an employer has an honest belief in its proffered nondiscriminatory reason," the employee cannot establish pretext

35

simply because the reason is ultimately shown to be incorrect.  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *see also Smith*, 155 F.3d  at 806 ("[S]o long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.").  When the honest belief rule is invoked, to establish pretext, "the plaintiff must allege more than a dispute over the facts upon which his discharge was based.  He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 434-94 (6th Cir. 2001) (citing *Smith*, 155 F.3d at 806–07). The "honest belief rule" is applicable in FMLA retaliation cases.  *See Seeger*, 681 F.3d at 285-86; *Donald*, 667 F.3d at 763.

In determining whether the employer had an "honest belief" in the proffered basis for discharge, the court examines whether Genesys has demonstrated a "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502-03 (6th Cir. 2007); *Braithwaite*, 258 F.3d at 494.  However, in determining whether an employer reasonably relied on the particularized facts before it, the employer's decisional process does not have to be optimal nor does the employer have to show "that it left no stone unturned." *Seeger*, 681 F.3d at 285 (quoting *Smith*, 155 F.3d at 807) (internal quotation marks

36

omitted).  Rather, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  *Id*. (internal quotation marks omitted).

Before making the decision to terminate Plaintiff Woida's employment, Genesys's Labor Relations Department conducted an investigation into the allegations of misconduct giving rise to the discharge.  The investigation included interviewing Woida; reviewing witness statements and interviewing witnesses; and reviewing time and attendance records.  *See* Woida SJ Ex. 28.  The information collected by Labor Relations substantiated the allegations against Woida.  Based on the record evidence, the Court concludes that Genesys made a reasonably informed and considered decision based upon the particularized facts before it at the time.   Although the investigation may have been less than "optimal," an employer's investigation need not be perfect.  *See Seeger*, 681 F.3d at 285; *Haughton v. Orchid Automation*, 206 F. App'x 524, 532-33 (6th Cir. 2006). Therefore, in light of Defendant's honest belief that during the period of June 12 -18, 2010, Woida left her work area unattended without authorization at a time when four ambulances had just arrived; acted disrespectfully in communicating with a patient after the  patient complained about her; and failed to timely call in to notify the hospital that she would be late for work, Plaintiff Woida cannot satisfy her burden of showing pretext by proving that the allegations against her were false.

Alternatively, a plaintiff can "admit the factual basis underlying the employer's

37

proferred explanation and . . . that such conduct could motivate dismissal," but ultimately demonstrate pretext where "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a . . . coverup." *Manzer,* 29 F.3d at 1084.  To make a showing of pretext in this manner, "plaintiff may not rely simply upon his *prima facie* evidence but must, instead introduce additional evidence of . . . discrimination." *Id.* A plaintiff can also establish pretext by establishing that the employer's proferred reasons were insufficient to motivate the employment action. *Id.* To do so, a plaintiff must produce evidence that other individuals, particularly individuals not in the protected class, were not treated the same way, even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. *Id.* at 1084.

As evidence that discrimination motivated her employer, Woida points to the deposition testimony of Carolyn Viera about certain statements Ms. Viera claims were made by Jennifer Roth.  According to Viera, Roth allegedly said to her, at some unspecified time during the course of her employment, "Just because your son is autistic, and my niece is ADHD and I don't take as much FMLA off as you do." [Viera Dep., p. 92].  Viera also testified that Roth made verbal statements "to many employees at the hospital" about another former co-worker, Mindy Coleman.  According to Viera, Roth "made it aware to other employees that Mindy had issues" and "would say, 'Just because she's fat doesn't mean that she could do her job. That's why she's on FMLA 'cause she

couldn't do her job,' or that  "'Mindy called in again.  She must be having weight issues today,' or something."  *Id.* at 93-94.  Viera admitted that these "statements" were not necessarily made to her, although she claims she was present a couple of times when Roth made the alleged statements in discussions with other employees.  *Id.*[20]

Viera also stated that Roth "would make comments" about Gwen Wilson, another co-worker, "like 'Gwen's called in again.  I bet she's probably just overtired 'cause she worked two doubles. Because it's you know, kind of convenient that she's making -- You know, she worked 16 hours and now she can't work tonight,' or something. 'Or, she must be taking her mom or, you know, taking care of her mom again today.  I can't believe she

---

[20]  It is not surprising that Woida does not rely upon her owns own deposition testimony because it contradicts Viera's testimony about Roth's comments about Mindy Coleman.  Woida testified that it was two co-workers who made the comment about Mindy Coleman being fat and on FMLA, ***not*** Jennifer Roth; in fact, Woida testified that Roth was not even present when those comments were made:

A:      There was an incident where Jennifer. . . There was a group of us standing behind the trauma area where our computers are located where we register patients.  She approached us and said she had a call-in, Mindy called in, and **two of the employees standing there stated if she wasn't so fat maybe she'd be able to get off FMLA and actually show up to work**.

Q:      **Who were those workers?**

A:      **Melissa Manness and Heidi Harsen.**

Q:      **And was Ms. Roth standing there?**

A:      **I don't believe she was standing there when the comments were made by Melissa and Heidi** but it was after the fact that Jennifer had presented that Mindy had called in again.

[Woida Dep., pp. 204-205.]

can't get a baby-sitter.'"  *Id*. 94-95.

Viera also testified that if Plaintiff Woida had called in, Roth "was like 'Oh,
Carolyn, you going to call in tomorrow since Lori called in today? . . . Should I get
coverage for you tomorrow since Lori called in today, since you guys have a pattern.'"
*Id.* at 95.

According to Woida, all of these alleged "statements" -- which Jennifer Roth
denies making -- are evidence that discriminatory animus toward her taking intermittent
FMLA leave was Jennifer Roth's true motivation for writing her up for the various
standards of conduct violations that led to the termination of her employment.

It is well-settled, however, that to withstand summary judgment, the plaintiff's
evidence must be admissible.  Fed. R. Civ. P. 56(c), (e).  Inadmissible hearsay evidence
cannot be considered.  *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996), *cert. denied*,
519 U.S. 1055 (1997); *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176
F.3d 921, 927 (6th Cir. 1999); *Shazor v. Professional Transit Management, Ltd*., ___F.3d
___, 2014 WL 627406 at *10 (6th Cir. Feb. 19, 2014).

Although the statements of a party-opponent are admissible under Fed. R. Evid.
801(d)(2), here the alleged "statements" of Defendant Roth are buried under layers of
hearsay.  Evidence containing multiple levels of hearsay is inadmissible for its truth
unless each layer, analyzed independently falls within an established hearsay exception
or is treated as nonhearsay.  *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d

40

1073, 1081 (6th Cir. 1999); *Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012)

("For double-hearsay statements to be admissible, each separate statement must either be

excluded from the hearsay definition or fall within a hearsay exception."); Fed. R. Civ. P.

805.  Thus, although Viera may be called to testify at trial in person and thereby render

admissible her deposition testimony that Roth once said to her,"Just because your son is

autistic, and my niece is ADHD and I don't take as much FMLA off as you do," Viera

Dep., p. 92,  or that Roth, at some unspecified time remarked, "Oh, Carolyn, you going to

call in tomorrow since Lori called in today? . . . Should I get coverage for you tomorrow

since Lori called in today, since you guys have a pattern," Viera Dep., p. 95,[21] no hearsay

exception covers Viera's testimony about what some unidentified co-workers told her

Roth had said.  Furthermore, to constitute evidence of discriminatory motive, a

supervisor's statements "must . . . have some relationship with the employment decision

in question; inappropriate but isolated comments that amount to no more than 'stray

remarks' in the workplace will not do. "  *Anderson v. Otis Elevator Co.,*923 F. Supp. 2d

---

[21]   The Court is not concerned about the "form" of Viera's statements, i.e., that the
statements are contained in the transcript of her deposition.  At the summary judgment
stage, the focus is not on the admissibility of the evidence's form.  *Celotex v. Cattrett,
supra*, 477 U.S. at 324; 105 S.Ct. at 2553 (explaining that in requiring the nonmoving
party to produce evidence to withstand a motion for summary judgment, "[w]e do not
mean that the nonmoving party must produce evidence in a form that would be
admissible at trial"); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003),
*cert. denied*, 541 U.S. 937 (2004) ("At the summary judgment stage we do not focus on
the admissibility of the evidence's form."). Instead, "the focus is on the admissibility of
its contents."  *DeBiasi v. Charter County of Wayne*, 537 F. Supp. 2d 903, 911-12 (E.D.
Mich. 2008).

1032, 1084 (E.D. Mich. 2013) (citation omitted).  None of the statements Woida relies

upon were made about her nor has she demonstrated that the statements had any

contextual or temporal relationship with her firing. They are no more than isolated

remarks, too ambiguous to be probative of discriminatory intent.  *See Cone v. Longmont*

*United Hospital Ass'n*, 14 F.3d 526, 531-532 (10th Cir. 1994), collecting cases.

Woida also relies upon her own post-deposition affidavit [Dkt. # 70-24], which

was prepared after Defendants filed their motion for summary judgment, to support her

claim that she was treated dissimilarly than Genesys employees who did not take FMLA

leave.   Woida states in this affidavit "I was written up for leaving early on several

occasions including my termination while other employees who were not using

intermittent FMLA were not disciplined for leaving a few minutes before the end of their

shifts."  Woida Aff., ¶ 9.  She also claims that while she had been issued a five-day

suspension after entering incorrect information when registering a patient, another

employee, "Heidi Harsen (who was not taking FMLA leave) was not issued any

discipline for repeatedly entering incorrect patient information," Woida Aff., ¶ 13.

Woida also claims that after she began taking FMLA leave, she was subjected to

discipline for failing to properly call-in to notify her employer that she was going to be

late for work, but two other FAAs, Jamie Lopez and Melissa Manness, on May 30, 2010,

"notified the person working in the cash office that they would be an hour late [and] were

not disciplined."  *Id.* at ¶ 23.

It is well-settled that only affidavits made on personal knowledge may be used to support or oppose a motion for summary judgment.  Fed. R. Civ. P.(c)(4).   However, where, as here, the plaintiff does not explain how she knows the "facts" asserted in her affidavit, she has failed to demonstrate the personal knowledge required for the Court's consideration of the assertions. *Letner v. Wal-Mart Discount Dept. Store*, 172 F.3d 873 (Table), 1999 WL 68766 at *5 (6th Cir. 1999); *Neff v. U.S. XPress, Inc.*, 2013 WL 449078 at * 5 (S.D. Ohio Aug. 20, 2013); *see also Peebles v. A. Schulman, Inc.*, 2006 WL 572337 at * 8 (M.D. Tenn. Mar. 7, 2006) (granting defendant's motion to strike affidavit statements, where, apart from the conclusory statement that it was based on "firsthand knowledge," there was nothing contained in the affidavit to suggest how the plaintiff obtained the knowledge of the underlying facts).[22]  But, even if the Court were to consider Woida's affidavit, Woida has failed to demonstrate that she and the employees with whom she seeks to compare herself are sufficiently "similarly-situated" to support her claim of pretext.

--------

[22]  Furthermore, Woida's statement in Paragraph 13 of her Affidavit that Heidi Harsen was not taking FMLA and was not disciplined like she was for incorrectly entering patient information contradicts her sworn deposition testimony that she did not know who had and who had not taken FMLA leave.  [Woida Dep., p. 156]   It is well-settled that a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986); *Farrell v. Automobile Club*, 870 F.2d 1129, 1132 (6th Cir.1989); *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir.1997); *Milner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 968 (E.D. Mich. 2003).

It is well-settled that

In order to show that an employer's proffered non discriminatory explanation is pretext on the grounds that a similarly situated employee received disparate treatment for the same conduct, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all relevant aspects."

*Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 378 (6th Cir. 2002 (quoting

*Ercegovich v. Goodyear Tire & Rubber Co., supra*, 154 F.3d at 352). *See also Mitchell*

*v. Toledo Hospital, supra*, 964 F.2d at 583 (to be deemed "similarly-situated," the

individuals with whom the plaintiff seeks to compare his/her treatment must have dealt

with the same supervisor, have been subject to the same standards, and have engaged in

the same conduct as plaintiff).  Plaintiff has not alleged, let alone established, that these

other employees worked in the emergency room, under Jennifer Roth's supervision.  Nor

has she demonstrated that they had the same disciplinary and attendance history that she

had or that they were at the same step of the CBA's progressive disciplinary procedure as

she.  Indeed, Woida has not demonstrated that any of her purported "comparables" had

ever been disciplined for the same multitude of infractions which led to her discharge.

Having failed to establish that Heidi Harness, Jamie Lopez, or Melissa Manness are

similar-situated in all relevant respects, no comparison of their treatment to Woida's may

be used to establish pretext.

For all of the foregoing reasons, the Court concludes that Plaintiff Woida has

failed to show that Defendants' reasons for terminating her employment were pretextual.

Therefore, the Court will grant Defendants' motion for summary judgment on all of

44

Plaintiff Woida's claims in this action.

F.     PLAINTIFF VIERA'S RETALIATION CLAIM

        Plaintiff Viera claims that in disciplining her and in terminating her employment,

Defendants retaliated against her for taking FMLA leave.  However, an FMLA claim

cannot be maintained by a plaintiff who was not an "eligible employee."  *Staunch v.*

*Continental Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008).  "The FMLA's 'eligible

employee' requirement applies in all FMLA cases, including retaliation cases."

*Hummeny v. Genex Corp., Inc.*, 390 F.3d 901, 905-906 (6th Cir. 2004) (finding no

FMLA retaliation claim where the plaintiff does not qualify as an "eligible employee").

        Under the FMLA, an eligible employee is one who has been employed for at least

12 months and "for at least 1,250 hours of service with such employer during the

previous 12-month period."  29 U.S.C. § 2611(2)(A); *Ricco v. Potter*, 377 F.3d 599, 603

(6th Cir. 2004).  Hours worked during the preceding 12-month period are computed from

the date of commencement of the leave.  29 C.F.R. § 825.110(d). In determining the

number of hours an employee has worked for purposes of FMLA eligibility, only the

actual hours worked are considered.  *Mulchler v. Dunlap Memorial Hospital*, 485 F.3d

854, 858 (6th Cir. 2007).  Thus, holidays and leave days may not be considered.  *See*

*Wansitler v. Hurley Medical Center*, 2011 WL 3512042 (E.D. Mich. Aug. 11, 2011)

(citations omitted).

        In this case, Viera did not qualify as an FMLA "eligible employee" for any of her

45

FMLA leave requests after August 19, 2010.  *See* Viera SJ Ex. 13 (granting August 11,

2010 request for FMLA leave 8/11 through 8/19/10 but denying FMLA leave request for

8/20 through 10/31/10).  She was consistently notified thereafter that she had not worked

the requisite 1,250 hours preceding the commencement date of each subsequent FMLA

leave request:

- November 12, 2010 request denied because she worked only 1,071 hours in the preceding 12 months.

- January 27, 2011 request denied because she worked only 1,029 hours in the 12 months preceding the 1/26/11 requested leave date

- March 9, 2011 request denied because she worked only 1,027 hours in the 12 months preceding requested 3/8/11 starting date of leave

- March 25, 2011 request denied because she worked only 1,018 hours in the 12 months preceding the 3/23/11 requested leave date

- April 1, 2011 request denied because she worked only 1,018 hours in the 12 months preceding the 3/30/11 requested leave date

- April 12, 2011 request denied because she worked only 1,011 hours in the 12 months preceding the 4/10/11 requested leave date

- June 14, 2011 request denied because she worked only 1,072 hours in the 12 months preceding the requested 6/10/11 starting date of leave

*See* Viera SJ Ex. 15; 18-19; 39-44; 63.

Viera's testimony disputing the accuracy of Genesys's time records is insufficient

to create an issue of fact concerning her failure to work the requisite 1,250 hours.  *See*

*Hinson v. Tecumseh Products Co.*, 234 F.3d 1268, 2000 WL 1597947 at *2 (6th Cir.

2000) (plaintiff's statements that she worked enough overtime to qualify for FMLA were

insufficient to rebut the defendant's employment records to the contrary and insufficient to establish a genuine issue of material fact); *Underwood v. Riverview of Ann Arbor*, 2008 WL 4371813 at *3-4 (E.D. Mich. 2008); *Sledge v. DaimlerChrysler Corp*., 2008 WL 2832180 (E.D. Mich. 2008) (same).

As Plaintiff was not an eligible employee she cannot establish that she was engaged in any FMLA-protected activity after August 19, 2010 and, thus, cannot maintain an FMLA retaliation claim related to any exercise or attempted exercise of FMLA rights after that date.

Further, the only adverse actions taken against Viera within the two-year limitation period preceding the July 6, 2012 filing of her Complaint are a five-day suspension on January 11, 2011, and her termination on November 1, 2011.  Viera has offered no evidence that either of these disciplinary actions was in any way causally connected to her protected FMLA activities, all of which occurred prior to August 11, 2010.  *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999).  In *Hafford*, the plaintiff's Title VII retaliation claim was based on disciplinary actions that were taken against him five months and ten months after he filed EEOC charges.  The court determined that, under these circumstances, the inference of a causal connection based on temporal proximity alone was too tenuous, and because that "this loose temporal proximity is insufficient to create a triable issue," the district court's grant of summary judgment was affirmed.  *Id.  See also Cooper v. City of North Olmsted*, 795 F.2d 1265,

47

1272 (6th Cir.1986) (finding insufficient temporal proximity to support an inference of retaliation where employer discharged plaintiff within four months of the protected conduct); *Lahar v. Oakland County*, 304 F. App'x 354, 359 (6th Cir. 2008) (holding that a five-month gap in time does not by itself suffice to get to a jury on causation); *Nilles v. Givaudan Flavors Corp.*, 521 F.  App'x 364, 370-71 (6th Cir. 2013) (holding that where plaintiff's last period of FMLA leave ended in April 2009 and he was not fired until October 20, 2009, there was insufficient temporal proximity to establish that his termination was causally related to his taking of FMLA leave, and, thus, plaintiff failed to state a *prima facie* case of FMLA retaliation).

Because Plaintiff Viera has failed to establish a causal nexus between her pre-August 2010 FMLA activities and her January 11, 2011 suspension or her November 1, 2011 termination, the Court concludes that she has failed to state a *prima facie* case of FMLA retaliation.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment **[Dkt. Nos. 59 and 63]** are GRANTED.[23]  Accordingly,

IT IS FURTHER ORDERED that Plaintiffs' Amended Complaint is DISMISSED, in its entirety, WITH PREJUDICE.

---

[23]  Defendants' Motions to Strike portions of Viera's and Woida's affidavits **[Dkt. Nos. 74** and **76]** are denied as MOOT.

48

Let Judgment be entered accordingly.


                                  S/Gerald E. Rosen
                                  Chief Judge, United States District Court

Dated:  March 18, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 18, 2014, by electronic and/or ordinary mail.

                                  S/Julie Owens
                                  Case Manager, (313) 234-5135